Haight, J.
This action was brought by a judgment creditor in aid of an execution to remove a cloud upon real estate upon which an execution had been levied. On or about the nineteenth day of May, 1873, The Rochester Savings Bank recovered a judgment in the supreme court again’st James R. Bond and Laura A. Bond, for the sum of $1,976.40, and thereafter and on the twenty-eighth day of May, 1873, an execution was issued upon the judgment to the sheriff of Livingston county, who subsequently and on the third day of January, 1876, returned the execution satisfied in part. On the sixteenth day of February, 1875, The Rochester Savings Bank assigned the judgment to one Lucius C. Bingham, who subsequently assigned the same to Charlotta A. Hamilton, who subsequently and on the second day of January, 1880, assigned the same to- the plaintiff in this action.
On the twenty-sixth day of March, 1883, another execution was issued upon the judgment to the sheriff of Livingston county, commanding him to levy and collect the sum of $468.65, that being the sum remaining unpaid thereon, and the sheriff has levied upon the lands described in the complaint as the lands of Laura A. and James R. Bond.
On or about April 6, 1865, the defendant, Laura A. Bond, was seized and possessed in fee of the lands described in the complaint. On that day was executed and delivered to Hiram D. Mills, as president of the Genesee River Bank, a mortgage upon the lands mentioned, to secure the payment of the sum of $2,500. Subsequently an action to foreclose the same was brought by the Genesee River Rational Bank, the successor of the Genesee River Bank, resulting in a decree of foreclosure and sale, which was entered on the twenty-seventh day of July, 1868. The amount adjudged to be due and owing by the decree was the sum of $1,374.21, besides costs, $94.40.
*428 >On or at, lut September 1, 1868, the Genesee River National Bank assigned and transferred the judgment and decree to one George W. Phelps, who subsequently and on or about March 20, 1869, assigned and transferred the same to one Lans'mg Andrews. Andrews died and his administrators caused the premises to be sold under the decree to one George M. Osgoodby, to whom was issued a referee’s deed, and the defendant, Mary E. Seymour, takes title through this deed and is in possession.
The court found as facts that at the time of the assignment of the judgment and decree by the Genesee River National Bank to George W. Phelps, and by George W. Phelps-to Lansing Andrews, it was not the intention of the parties to the assignments to satisfy, pay off, or discharge the judgment and decree, and that the judgment and decree was not paid, satisfied, or extinguished by Laura A. Bond or James-R. Bond, either after or before the assignment, and the judgment never at any time, either before or after the assignment, became functus officio, as alleged in the complaint, but at the time of each of the assignments was a valid living judgment and decree, kept alive by the acts and intentions of the parties and by their valid and legal assignments, thereof.
The court further found as facts, that the defendant, Mary E. Seymour, the present owner of the premises, and all the defendants in this action through whom the title of the premises passed by virtue of the judgment and decree, were-owners, holders and purchasers in good faith, without any notice whatever of the claim that the judgment and decree-had been paid before the assignment thereof. The appellant excepts to these findings, and these exceptions present the only questions which we are called upon to review upon this appeal.
It is claimed by the appellant that the judgment and decree was fully paid during the time that Phelps held the assignment of it, and before the assignment to Andrews. His testimony is to the effect that when the judgment and. decree was assigned to him by the Genesee River National Bank he paid, as consideration for the assignment, the amount of the judgment, $1,468.68.
It further appears from his testimony, that at some time-thereafter, but precisely when does not appear, he was delivered a check by James R. Bond for the sum of $10.50, that he was also given a promissory note for the amount of $400, which he endorsed and had discounted at the bank, and that, he subsequently took it up.
It further appears that he subsequently assigned the judgment and decree to Lansing Andrews, at the request of the Bonds, and it is alleged in the plaintiff’s complaint that Laura A. Bond and James R. Bond, one or both, had borrowed of Andrews the sum of $1,400, or thereabouts, and. the assignment to Andrews was made to secure that loan.
*429 It further appears that a mortgage on property in Batavia was transferred by the Bonds to Phelps, to secure his liability upon the note, and that he subsequently obtained the money thereon.
The evidence is not very specific as to the time when the various transactions took place between the Bonds and Phelps; but it is quite evident that it was the intention of the parties to keep the judgment and decree alive. Had Andrews understood that the judgment and decree had been paid, it is not probable that he would have loaned the Bonds $1,400 upon an assignment of the judgment and decree as collateral. Phelps held the decree but a few months, and it is quite evident that he took an assignment of it and advanced the money to the bank at the request and for the accommodation of the Bonds, so as to prevent the sale of their lands under the decree. The loan of $1,400 from Andrews was about the amount of the judgment, and we think the inference may properly be drawn from the facts, that this money went to pay Phelps, or to replace other money that was used to pay him, and that the transaction was the same in fact as if Phelps had taken an assignment of the decree and paid therefor the amount of the judgment, and that Andrews subsequently had taken the same from Phelps, paying him therefor the same amount.
If we are correct in this view of the evidence, it follows that the findings of the court were proper, and that the judgment should be affirmed.
' Smith, P. J., and Bradley, J., concur.